Good morning, Your Honors. May it please the Court, I'm Manuel Rios, attorney for the petitioner, Mr. Rangel. There's only one issue left for the Court to decide today in light of this Court's en banc decision in Abebe, and that's whether or not the BIA correctly found that Mr. Rangel's rape of a minor conviction, committed when he was 14 years old, could serve as a basis for a ground of removability when he could not have been prosecuted criminally under federal law because the Federal Juvenile Delinquency Act, the FJDA, would have prohibited federal criminal prosecution. The BIA's decision in this case is not persuasive as it makes the state treatment or the classification of the offense dispositive, and it undermines the whole reason for the amended definition of conviction that Congress made in 1996. Mr. Rios, can I get your take on the following? Your client was charged for three different rapes of the same young woman, but the last one he committed when he was 20 years of age. He was not charged with that as part of a plea bargain. What impact, if any, should that fact have on our reasoning? In other words, had it been presented to a federal prosecutor and you had all three allegations, one of which involved an alleged crime when he was 20 years of age, which clearly could have been tried without any interference with the statute to which you make reference, should that have any impact on our reasoning here? Your Honor, as far as the original information, I believe that he might have been investigated for those, but as far as being actually charged for those? My understanding, and correct me, maybe your opposing counsel can tell me if this is wrong, but my understanding from the record is that in exchange for dropping the third count, which was the one that occurred when he was 20 years of age, he pled guilty to the incidents of 1985 and 1986. Let's assume, just arguendo, that that's true. What impact, if any, should that have on our reasoning in terms of the application of the Federal Juvenile Delinquency Act? Well, it appears that if that were indeed the case, that he would, you know, that he could possibly have been tried criminally. I'm not, because of the nature of the crime, it's a statutory rape type of case, you know, where there's no actual violence in this circuit, at least necessary, the violence, excuse me, use of force necessary. This Court has held that basically the use of force for a type of penetration is not the use of force that's contemplated by the statute as far as the crime of violence goes. So it doesn't necessarily obviate the treatment for Mr. Ronhill under the FJDA. Counsel, how do you square your argument with this Court's decisions in Vargas, Hernandez, and Morash? Well, Your Honor, Morash is fairly simple. Morash doesn't mention the FJDA. Morash couldn't have bailed himself of the FJDA. Morash, the fact showed, was 18, and although he could have been, when he committed the second crime that he sought to have the federal court just use some kind of a hypothetical analysis. So he couldn't have bailed himself under the FJDA in any event. His argument was that Oregon could have tried him as a juvenile but didn't, and so that's where the Court ended up. At that point, you know, because Oregon didn't, the Court couldn't, and he couldn't have bailed himself of the FJDA. Vargas, Hernandez is a little bit different, but certainly it can be distinguished on his facts where manslaughter, excuse me, murder, attempted murder, even manslaughter, the crime to which he pled out are exceptions to the FJDA. So therefore, he didn't have the petition, he didn't have a certain entitlement to the FJDA treatment. But moreover, I think that the underpinnings of Vargas-Hernandez, I think, are off because it relies on Vieira-Garcia, and Vieira-Garcia was the first case that came through. It's a First Circuit case, and I think it's very important to note that Vieira-Garcia was based on a position of the BIA that was later repudiated in Devison. So the issue in Vieira-Garcia was whether or not the BIA's construction of the statute was permissible. Counsel, there have been subsequent decisions by other circuits that agree with the holding of the First Circuit. Are you aware of any circuit opinion that advances or adopts the theory for which you are arguing here? No, Your Honor, I'm not. But this Court can actually be the first to do it. This is the issue is that Vieira-Garcia I'm only speaking for myself, of course, but I see two possible obstacles to what you just said. One is that our Court and the Supreme Court have said that immigration is an area in which national uniformity is especially important. And secondly, we do owe some level of deference to the BIA in its interpretation. So how do we get over those obstacles? Well, Your Honor, I'd like to get back to the Vieira-Garcia case. The issue in Vieira-Garcia was the BIA had decided that there was no evidence that Congress sought to exclude juvenile convictions under the Act. That's been repudiated by the Board in Devison. And unfortunately, Vieira-Garcia didn't consider that. They didn't have the benefit of the en banc Board decision in Devison. So therefore, I would suggest that any case that actually relies on Vieira-Garcia isn't as stable as it should be because Vieira-Garcia was based on a position of the Board that was later repudiated by an en banc Board. And in fact, if we look at Devison, Devison actually states that the FJDA should be the standard and that juvenile offenses are not crimes. So if juvenile offenses are not crimes and the FJDA is the standard to govern whether offense should be considered an act of a juvenile delinquency or a crime, then it shouldn't be dependent upon a state law but on the federal law. And as Your Honor was stating, that uniformity is important. And in fact, Vieira-Garcia uses a Restrepo case, which has also been undercut by the Supreme Court and Lopez, where as evidence of why the state's designation of the offense should be dispositive, the First Circuit said that we can look at the state designations as felonies to override. Counsel, are you familiar with the Savchuk decision from the Second Circuit? I am, Your Honor. It does respond specifically to your argument about Devison and still comes out by saying that the First Circuit, this court and Vargas-Hernandez were correct that you simply take the conviction as you find it from the state court. And if they did not treat it as a juvenile conviction, it's a conviction under the statute. So I appreciate that you would like us to strike out on our own, but I just have difficulty personally seeing how that is available to us. Well, I understand, Your Honor. But, you know, historically in the past, in the time that Vieira-Garcia was decided, the state designation actually had some kind of importance in immigration proceedings. Subsequently, in Lopez and Cachuri-Rosendo, we found out that the state designations don't mean anything in regard to a federal immigration law, just as when you're doing an inquiry as to an aggravated felony, the state's designation of misdemeanor or felony offense doesn't make a difference in the calculus of whether or not it's an aggravated felony. The same should be true here. The state's designation of the offense being an adult or a juvenile crime shouldn't have any kind of import. We should be applying a uniform federal standard. And I think that that's the trend, Your Honor. But Vieira-Garcia makes the point that we're not really going to decide what the state's going to do here. This isn't so much a function of age, but rather how the state chose to try the defendant, and in this case they tried him as an adult. That seems to be the pattern. I realize there are other distinguishing characteristics of some of these cases, but the uniform one seems to be that the federal court says we're not really going to focus on the age, we're going to focus on whether the state tried him as an adult. And if they did, that's the way we're handling it. And, Your Honor, I think that that frustrates the whole intent and purpose of the 1996 amendment, is that the Congress and prudently the board said and quoted a federal, excuse me, Supreme Court decision saying that federal law shouldn't be dependent upon state court actions. And that's what we're doing here is we're making everything dependent on how the state court treated it, and what our focus is is not on the offense, but rather on how the state treated the offense. But otherwise, counsel, with respect, you're asking us to, in effect, treat it as if this is starting ab initio, and in that case we've got three crimes. One where the guy's 20 years of age and the federal prosecutor can say, no, we're not waiving that. We're prosecuting this guy as an adult. And so it seems to me that your client's got a problem either way. Whether it's uniform across the country or we pretend that we're going to prosecute this ab initio, we've got a guy who did this again when he was 20 years of age, clearly an adult, and he's stuck that way. Isn't that a correct analysis? Well, Your Honor, I would suggest that if he could have been prosecuted federally, I believe that that's not a fact. I think that there's some issues with that as far as whether or not that's a crime of bias. I'd like to reserve the remaining. Well, you're minus, but we asked you a lot of questions, so we'll restore a minute for rebuttal when the time comes. Thank you, Your Honor. Good morning. May it please the Court. Russell Verby, on behalf of Attorney General Eric Holder. For immigration proceedings, Congress defines a conviction as involving a finding of guilt coupled with some sort of restraint on liberty. So if we line up this conviction and the 96 months confinement alongside the statute, we have a conviction for immigration. But we all know that juvenile delinquency adjudications don't count. So the petitioner wants the Federal Juvenile Delinquency Act to be resident extension of the Section 101A48 decision. This argument goes against not only the statute I mentioned a moment ago, but also the existing precedent in this Court. As we know, in Marash, this Court said that the state's treatment of the alien controlled, not how some hypothetical federal prosecution might have gone. Eleven years later and an amended statute later, this Court reaffirmed itself in Vargas and said that we're not going to second guess the state court actions and it's not for the immigration judge to do so. Counsel, for your part, are you aware of any of the circuit precedents or, in fact, any other case besides this one in just involving the BIA in which someone's conviction relates to acts committed while less than 15 years of age? Putting aside that there may have been the potential to charge him or to convict him, he wasn't, in fact, convicted of things that happened when he was 20, but rather when he was 14, I think. I don't believe there's a case that lines up squarely factually. Should that make any difference? And if not, why not? I don't believe so, Your Honor, because it goes back to what Judge Smith was talking a moment ago. If we're going to start doing federal court hypotheticals, we're going to open up the record quite considerably, and this petitioner is going to lose again. I also think if we want to talk about a federal hypothetical, I mean, this petitioner could have been prosecuted despite the Federal Juvenile Delinquency Act by simply doing what he did in the state court and the federal court, which was pleading guilty, but walked in and consented. But, Counsel, that 20-year-old conviction or the events that occurred when he was 20 years old, that was not charged in the notice to appear, was it? No, it wasn't, Your Honor. So we can't really consider that, can we? We can't with respect to the actual charge of removal, but if we're going to do some sort of hypothetical approach as to what the federal authorities might have done, then maybe it does have some bearing, Your Honor. Isn't that really what we're talking about here? As long as we're just sticking by the facts and the record, what the, in quotes, conviction was, then we have a little bit of a firm ground. On the other hand, if we're going to engage in hypotheticals, then it seems to me we ought to be able to say, okay, we've got these three different instances, and one of them, the guy, was 20 years of age. Since we're going to do a hypothetical, let's charge him as an adult on the 20. Is there any reason why that would be outside the range of a hypothetical, if that's where we're going? If we're going to go to hypotheticals, a hypothetical, as we all learned in law school, can involve almost anything. So I think that's out there. Well, it has to involve what's in the record. I mean, we can't make it up. What's hypothetical about the fact that the petitioner committed the offense when he was 13 or 14? What's hypothetical about that? There's nothing hypothetical about that. But we do have other evidence in the record that shows he committed a similar offense that could have garnered prosecution, as Judge Smith said. But he was not charged with that in the NTA. No, he wasn't, Your Honor. Okay. And I admit that. But I think the other thing is we have the assertion that there's no way this person could have been prosecuted federally for this offense. He could have. He could have consented to it, just as he did. Even though the offense was committed while he was less than 15? The Juvenile Delinquency Act allows for consent. And he could have consented to an adult prosecution, just as he did. It wasn't like he was hauled before a state court against his will to face an adult charge. At 20 years old, he went in and he pled guilty. He could have done the exact same thing in a federal court, had it been in a federal court. So I think the hypothetical cuts against him both ways. Equally in a bailing, is a petitioner's reliance on matter of demison, matter of de Luiz, and matter of Ramirez-Rivero. The latter two decisions predate the statutory definition at issue in this case. And they also deal with how we're going to look at a foreign conviction involving an offense committed when someone was a minor, when it's in a federal immigration proceedings, ones that happened overseas. What do we measure them against? The federal standards. So those two latter decisions aren't really all that helpful in this context. And as for matter of demison, it doesn't say what the petitioner wants it to read. Petitioner reads the decision as saying that if an offense could have been treated as a juvenile offense under the federal law, then it can't carry immigration consequences. What the case actually says is that the state juvenile delinquency determination does not meet the definition of a conviction, and it controls even if subsequently the state authorities come back and sentence the person or re-sentence the person as an adult for their probation violation. It's the initial state action that controls. They also reiterate that Section 101A48 is the benchmark standard, and also that Congress, when it acts, it is presumed to do so knowing that the law says, knowing what its other law says, and knowing what the interplay between those two laws are. If Congress wanted the Federal Juvenile Delinquency Act read as part and parcel of Section 101A48, it could have done so, but it didn't. What about Ramirez-Rivero? Ramirez-Rivero also, Your Honor, dealt with a foreign conviction. It dealt with a conviction that took place overseas, and the board, knowing that we're dealing with perhaps juvenile justice systems, if they even have a juvenile justice system that's not as sophisticated as our own, had to measure it against something to see if there were some protections involved. But in Ramirez-Rivero, didn't the court focus on, again, the age at the time of the commission of the offense? Absolutely, versus the age at the time of conviction. Correct, Your Honor. Right. And I'll also note briefly with respect to Devinson, Devinson doesn't actually say that the Federal Juvenile Delinquency Act is our benchmark, that everything has to be measured against it. In fact, it was looking at a New York State scheme with respect to juveniles and comparing it simply to the Juvenile Delinquency Act and noticed that there were some similarities and that they basically tracked along the same lines. It didn't require that they actually match lockstep and lockstep. In fact, it said on 1167 of the decision, these two schemes, the federal and state, are sufficiently analogous and even notice some differences between them and still upheld the state action. And that's what should happen in this place. The state action should be upheld whether it's juvenile or adult. If there are no further questions, that will conclude the Attorney General's presentation. Thank you. I don't believe we have any more questions. Mr. Rios, you may have a minute for rebuttal. Thank you, Your Honor. I'd like to address the Ramirez-Rivero case. And, in fact, the Board already does this. They already do apply a hypothetical FJDA. So they apply the actual FJDA as the standard in federal courts. In foreign courts, it's the hypothetical application. So the only kind of conviction that's left out is the state court. And so the state court then is dependent on the schemes of the state. And I think that that frustrates the statute. It's not a uniform application. And where the Board already does this, and it's not given any kind of evidence that Congress intended this because it simply says a court, and the Congress didn't differentiate between the types of courts, the state courts, the federal courts, a foreign jurisdiction. Where the Board already does it, it seems like it's an arbitrary matter to not apply it to state convictions. And it's not dependent on, as counsel stated, whether or not a foreign jurisdiction has a juvenile scheme set up. And, in fact, in O.N., Canada, the Board stated that outright and it examined a Canadian conviction, juvenile conviction. So with that, I'd ask that the court find that a federal standard should rule this and grant this petition a remand to the Board. Thank you, counsel. We appreciate very much the arguments of both of you. The case is submitted.
judges: Benitez, Graber, Smith M.